May it please the Court, Damina Chen for Juan Doss. I'd like to reserve five minutes for rebuttal. I raised... Excuse me. Why don't you put 15 minutes on the clock? Now, as a condition of doing this, when that red light comes on, you finish what you're doing. Okay. Thank you, Your Honor. I raised a number of issues on the appeal, but I'd like to focus today on two sets of issues. The first set of issues would be related to the proper interpretation of 18 U.S.C. 1512b. And the second set of issues would be with regard to the propriety of the mandatory life sentence in this case. I'm sorry? With the mandatory life sentence in this case would be the second set of issues. So turning first to the first set of issues, Mr. Doss was convicted under 18 U.S.C. section 1512b of knowingly, corruptly persuading two individuals, one his wife and co-defendant and the other a prostitute, to withhold testimony at an official proceeding. In this case, that would be his trial. And when we look at the propriety of the conviction in this case, I think it's really important, it's crucial to recognize that merely acting with the intent to prevent testimony does not violate this statute. The statute clearly states that there must be knowing, corrupt persuasion, and the Supreme Court's decision in Anderson made it very clear that those words, knowingly, corruptly, must do some work. So the part that's going to be used in this case is that there must be knowingly, corruptly persuasion. Sotomayor, do you agree that D should assert their Fifth Amendment privilege? It's not a problem. Well, I think it's a little bit different with attorneys because we have our own ethical codes of conduct and the code of professional responsibility that we're well aware of and that we are held responsible to. So I think that with regard to an attorney, it presents a slightly different problem because it's possible that acting in violation of the ethical codes of conduct could convert otherwise lawful conduct into knowingly corrupt conduct. But this defendant wasn't subject to the attorney's professional codes, and I don't believe, at least there was no evidence, that there was sort of a keep-away order in place for him. So ---- No. He was simply suggesting to his wife, his former co-defendant, that she assert the marital privilege. Yes. And not testify. Yes, he was. With regard to the wife, and I think with regard to the wife, the purpose of the privilege really shows that what he was doing could not have been knowingly corrupt. The purpose of the marital privilege is to preserve marital harmony. And we have to assume, and it's clear in the privilege, that part of the ---- It's kind of an interesting case to preserve marital harmony, isn't it? It is kind of an interesting case to preserve marital harmony. But what's clear is that the marital harmony includes someone not wanting to testify because it would send their husband to prison for the rest of their life. So I think it's clear that there has to be some room for husbands and wives to talk about that. Well, if you testify, I'm going to go to prison for the rest of my life, I really wish you wouldn't do that. I can't see how that kind of conversation can be knowing corrupt persuasion. And the government, I believe, concedes that simply that conversation is not knowing corrupt persuasion. What makes it knowing corrupt persuasion under the government's theory is that he was acting in his self-interest. And I have to submit that it cannot be that acting in one's own self-interest converts otherwise lawful conduct into unlawful conduct. Because I've read it more times than I can remember that the adversarial process is the cornerstone of the criminal justice system. And the adversarial process means both sides act in their own self-interest. What if he had said, if you don't assert the marital privilege and refuse to testify against me, when I get out, I will beat the hell out of you? Then that would be threats and intimidation. And he was not charged with threats and intimidation, and that's not the government's theory in this case. I think it's really important to know that the government, especially on appeal, but at trial, during the jury instructions conference, during pretrial, and in fact, in their closing argument, did not assert that he even implied that he was going to beat the anything out of her. They said that the reason why his conduct was knowing corrupt persuasion was because it was with an improper purpose. And the improper purpose was to protect himself. Criminal defendants do all sorts of things to protect themselves. And a lot of them prevent evidence from getting to the jury. They invoke the fifth. They hire attorneys. They move to suppress evidence. In all these cases, they are taking action to protect themselves. They're taking action to prevent evidence from getting to a jury. And they're doing it. Kagan. What about – harder, it seems to me, considerably, is the other count of witness tampering with regard to CF. So what about that? I agree that that's harder. And the reason is because there's no marital privilege in place. But the same – And the other reason is because there were allegations. The allegations go beyond simply saying to her, you have a fifth amendment privilege not to testify, please don't testify. There are two sets of allegations. One is an implicit threat, and the other is an implicit request to lie. Okay. Let me address the implicit threat first. The implicit threat, I believe, was it would be bad for you. Or it would be bad for – but that didn't even come in. That didn't come in. Exactly. The implicit threat was if nobody testifies, nobody gets in trouble. But if somebody testifies, everybody gets in trouble. In other words, if you testify, we're all going to prison. If you don't testify, nobody's going to prison. Then we're into the question of what could be implied from that. In terms of the threat, I think it's very important to recognize that the government's position at trial, at closing, during the instructions conference and on appeal is not that the threat is what makes this illegal. It's that the improper purpose is what makes it illegal. And there's a longstanding rule that if a general verdict relies on a valid theory and an invalid theory, and we can't tell which one the jury relied on, the verdict must be overturned. In this case, the government is telling us the theory. Why we win on sufficiency is because there was an improper purpose. So I agree. I absolutely agree that if all we were talking about was, was there a threat, someone could read that there was a threat in this case. But we don't know that the jury relied on the threat allegation. In fact, it's likely that they didn't rely on the threat allegation because the government says very clearly in closing, yes, she said she wasn't scared. She said she knew she didn't think it was a threat. But what matters was his improper purpose, and his improper purpose was to prevent her from testifying. So that's one thing. But the lie, I think, is quite important. It wasn't alleged. It wasn't alleged. Exactly. So it creates a serious variance problem. What we're saying is, well, they could have convicted because there was testimony, and she gave the testimony, actually, that he said, that she should say, Brohm did it. Then there's a serious notice problem here because not only was it not alleged in the indictment, but there was an entire pretrial motion in which the whole issue was, well, is it enough to try to convince someone not to testify? And not once did anyone say, well, there's this other allegation in this case, which is that he tried to convince her to lie. And clearly, I believe, if the government thought that that was their theory, they would have told the court. There's nowhere in the record that that was the theory until closing argument. And they focus on that in their answer on appeal, but I think that that makes it even more problematic because they're focusing on that aspect for the sufficiency, and yet in terms of the improper purpose, they keep telling us that the improper purpose is that he acted in his own self-interest. So I don't think that the court can do that. Kagan. Is there a distinction, even for this purpose, between the marital privilege and the First Amendment, the Fifth Amendment privilege, in that the marital privilege is specifically about the relationship, as you were saying before, and is may even assume some communication between the partners, or it certainly would seem to sanction it. That's the whole point of the marital privilege. The Fifth Amendment privilege in one sense is none of his business, whether this woman asserts the Fifth Amendment privilege or doesn't. He has an interest other than a corrupt interest in whether his wife asserts the marital privilege, i.e., the marital relationship. But what's his interest in the Fifth Amendment? His interest in the Fifth Amendment privilege is to protect himself. And I am not at all saying that the two are the same. But what I'm saying is the mere fact that he's acting to protect himself can't convert the conduct into illegal conduct. We encourage that. Kagan. I understand that, but it does suggest that his action is, at least that the privilege has – is not a reason to insulate otherwise culpable conduct. In other words, the privilege is not – itself doesn't have any policy force here, that would lead us to – to absolve him of otherwise culpable conduct. If we believe that it is otherwise culpable conduct. And I think that the work the privilege does in that instance is that if he had no – if she had no privilege, then him telling her not to testify is telling – is telling her to obstruct justice. You don't testify, you disappear, you go to Mexico, whatever. When he tells her to assert the privilege, the privilege is before the court. The court can determine whether – But does it matter whether she had already been given immunity by then? I think it would matter, but she hadn't been given immunity by then. She hadn't, but – She had not. I think it would matter. And if he knew that she had immunity and he knew that by refusing to testify she would be acting against her obligation to testify, that would be, I believe, an entirely different story. But the facts that came out at trial, and they're undisputed, is that she was given immunity after this alleged conduct occurred. I see I only have five more minutes on my first, so I'd like to move to the second issue, unless the court has further questions on the first. On the second issue, I think that the parties – the parties agree that the Nevada statute, which served to trigger the life – the life mandatory minimum, was not categorically a prior sex conviction in which the victim was a minor. So the question is whether the modified categorical approach can be used to conform the Nevada conviction to the Federal statute. And I think that the answer, at least now in the circuit, is quite clear. When Navarro-Lopez was decided, I'm not sure that everyone understood its implications, but it has since been applied in numerous contexts, and one of them almost on all fours with this case, and that would be Estrada-Espinosa. Yeah. The Supreme Court has granted cert in a case that seems – it's not on this issue directly, but it has to do with one of these cases in which there's $10,000. The question is the amount of money, and the issue was a – it seems like a closely related issue. Do you know? I'm afraid I don't know the answer. It's called Nijawan or Nijajawan. I'm not exactly sure. I wish someone would just say it so I could imprint it in my memory. But it's an immigration case. And the issues that arise in the immigration statutes are very different, because there's no Sixth Amendment right in the immigration cases. And I think that the Supreme Court made very clear in Shepard, and this Court has now made clear in Navarro-Lopez, Estrada-Espinosa, Aguila-Montes de Oca, a number of cases that where it's a criminal enhancement that we're talking about. And the Sixth Amendment applies. You have to apply the categorical approach. And in this case, there is no way to conform the Nevada conviction to the Federal definition of a sex conviction in which a minor is a victim, because as the Court, and I'm sure is aware, in Estrada-Espinosa, this Court held en banc unanimously that the California Penal Code 261.5C was not sexual abuse of a minor. And the reason for that is because under California Penal Code 261.5C, the minor is defined as under 18. And under the Federal definition of sexual abuse of a minor, the minor has to be between the ages of 12 and 16. So there's no looking to documents. There's no looking to admissions. There's no looking to anything. The fact that this individual is under 17 is an element that is simply missing from the Nevada statute, and it cannot be conformed. If the Court has no further questions on that, I have a little bit more time for my rebuttal. Roberts. It's seven minutes for rebuttal. Thank you. And just in case you catch a panel with a judge from Las Vegas or Reno, it's Nevada. Nevada. Thank you. Ms. Burtis. Good morning. Good morning, Your Honor. May it please the Court, my name is Ann Boyts, representing the government. Why do we have Ms. Burtis? I replaced Ms. Burtis last week because she's preparing for trial. And so I apologize, apparently, for the formality. Well, I picked up the wrong sheet, so I apologize to you. Yeah. You go right ahead. Thank you, Your Honor. With the Court's permission, unless there are questions on the other issues, I'd like to focus on the two issues that the defendant has focused on in her oral argument. First, the proper construction of 18 U.S.C. 1512b. Hard to get around Arthur Anderson, isn't it? Actually, I think Arthur Anderson is helpful. I think when one looks at Arthur Anderson, what it does is it says that each of these words have to have meaning. And essentially, there are three slanter elements in 1512b, knowing, corruptly, and with the intent to, in this case, cause or induce a person to withhold testimony from an official proceeding. Well, the Supreme Court gives an example of something that could not qualify. They specifically identify the marital privilege, don't they? No, Your Honor. There they categorize. That was when they were arguing that you needed a particular, you needed consciousness of wrongdoing, because there are certain acts, including, for example, the marital privilege, where one could, but not necessarily, ask someone to invoke it for a purpose that is not malign. But they weren't categorically saying that asking someone to do so is invariably benign. What they're saying is that it depends on the motive. But the statute already has the intent to cause provision, and that seems to take care of the self-interest part. So how can self-interest alone be the corrupt? I think one can envision a scenario in which one would have an intent to have someone withhold testimony by asserting a valid privilege, but would not be doing it with consciousness of wrongdoing, would not be doing it with an improper motive. If, for example, But it's fairly remote. I mean, one has, I have a, with regard to the marital privilege, we can get on to the other one, which I think is harder, but with regard to the marital privilege, the whole point of the marital privilege, is it not, is that it is a balance between the preserving the marriage and advancing the criminal justice system. And if somebody seeks to take advantage of the marital privilege in order to, and here he did a pretty good job of saying why, i.e., to preserve his marriage, he claimed. Of course he was self-interested. You're always going to be self-interested if you do that. But I'm having a very hard time seeing what's corrupt about that, since it's legitimate. I think in this case, the marital privilege, you're correct, the purpose of the marital privilege, and the only marital privilege that is at issue here, is the ability of one spouse to refuse to testify against the other. Although I note that the district court was skeptical as to whether that privilege applied in this case. I believe that was based in part on the timing of her plea and the plea agreement and then the dates of these letters, which came about a month afterwards. But with respect to the purpose, you know, I think if someone, it goes ultimately to the question of motive. If the jury had found that he did it as they were instructed, specifically they were told that if they, that merely asking a spouse not to testify without consciousness of wrongdoing does not by itself establish a corrupt intent, because a married person may invoke a privilege not to testify against his or her spouse. Essentially, the question, and when the court seems totally circular, what is the consciousness of wrongdoing going to be about? If it is wrong to ask your spouse to testify against, not to testify against you because you don't want to be convicted, then he would be conscious of wrongdoing. And if it's not wrong, then he wouldn't be conscious of wrongdoing, because it isn't wrong. I think the consciousness of wrongdoing goes to what one knows. And I think, you know, if there were a scenario in which the jury could have concluded that he did so solely out of a concern to preserve the marriage, but not out of an attempt to convince his wife, you know, that in fact he was sorry for the way he treated her, he didn't want her to testify, you know, it's clear that what he is concerned with is saving his own skin. Well, motives are often mixed. So how do you deal with a mixed motive? Maybe he wants to save his skin, but save the marriage, too. And if he testifies against him, the marriage is probably shot. So how do you separate mixed motives? I think at this point the jury simply needs to decide whether there was an improper  I think the existence of other motives doesn't negate the fact that he was... So for your purposes, mixed motive is enough. The fact that he may sincerely wish to preserve his marriage and her testimony against him would irreparably sever the relationship. The fact that he has that concern isn't enough to save him if he also has the concern of saving his own skin. The question is, did he do so correctly? Did he do so with an improper motive? Did the jury know that his wife was a prostitute? Yes, they did. And that he had been pimping her? Yes, they did. I believe that there were references in iPod, as I don't have the sites directly in front of me, but, for example, where one of the minor prostitutes had actually told his wife some of the tricks that she could use to attract more clients, some of the things that she could have done. So, yes, there was testimony on this point. Does that have any bearing here? I think it could go to the jury's understanding of intent, whether he was genuinely concerned with preserving the marital relationship solely or whether he was acting intentionally to prevent himself, you know, to save himself. Doesn't the phrase of the statute is intimidation, who uses intimidation, threatens or correctly persuades with intent to cause or induce any person to withhold testimony. We usually apply this statutory canon, whose Latin words I can't pronounce, i.e., the words are influenced by the company they keep. The language here is intimidate, threaten or corruptly persuade. Doesn't that suggest something in addition to the very motive that's already in the statute? Well, I think not. I think one of the things when this statute was amended to include corrupt persuasion, the legislative history suggests that they truly wanted to include non-coercive elements. They wanted to include lying. They wanted to include bribery. But they want to include something that was persuasive and based on a matter of legal privilege? I think that they certainly could have. I mean, when they were doing so, they were enacting it against the scenario of the interpretation of 1503, then the omnibus obstruction of justice statute and the interpretation of corrupt and correctly in that context, which had been for an improper motive. I think it provided a more or less. I care we know it's not that, because the for an improper motive is there by itself with intent to cause or induce any person to withhold testimony. And I know you have a very creative but very limited explanation for, you know, a minutia of cases in which perhaps you can have the intent to cause or induce somebody to withhold testimony, but not correctly, although I'm having a hard time seeing  I think one could envision a scenario where, for example, a mother asks her son to invoke the Fifth because she's concerned about the strain if he's on him, if he's testifying against a family member. And I think there are scenarios in which it is certainly plausible that one could act with the intent to cause someone to withhold testimony. And what the cases say is you need something beyond that. You need an improper motive. And I think what this Court is being asked to decide is whether a motive that goes beyond the privilege itself, the purposes of the privilege, in this case to preserve oneself, is an improper motive. And the government submits that it is. We think privilege is not a reason to convert what would be otherwise culpable conduct into something that is protected, that falls outside the ambit of the law. Scalia. Give us an example of a case, a criminal case, where a wife suggesting to a husband or vice versa to invoke the marital privilege would not be corrupt under the statute. I think it might be a case where, for example, the wife faced no criminal culpability herself, but was doing so because she was concerned about the strain on her husband's health testifying or was concerned that there might be a risk to her husband. Well, corruptly. I mean, corruptly is a weird word to use for self-interest. Essentially, in the end, you're talking about self-interest. Yes. And corrupt is a strange way to say self-interest. Well, I think if the Court looks at the way corruptly is being construed and I think if the Court looks at the purpose of the privileges here, the Fifth Amendment privilege isn't meant to protect beyond the ambit of the law. We have to get into the Fifth Amendment. Right now we're not in the Fifth Amendment. We're talking about the marital privilege. Okay. I think with respect to the marital privilege, because it rests on the spouse who is being called to testify, the decision to assert it or not, I think ultimately it is up to that spouse to make that decision, and for that spouse to make the decision as to whether the marital relationship is so broken down that they would prefer to testify. I'm still trying to think of an example where a husband faces jeopardy and suggests to his wife that she invoked the marital privilege. Would, under your definition and your argument, not be self-interest-slash-corrupt or not malign? I think in that case, if he was doing so in order to protect himself, then I think that would qualify as an improbable. Well, that's sort of part of the deal, isn't it? Well, I think the question is whether, I mean, as this Court had originally sort of addressed quite a lot. If somebody is trying to save their skin, avoid incarceration, avoid a criminal conviction, is that always evil or does it matter? I think in this case, what we're faced with is the defendant trying to prevent witnesses. In this case, his wife had already signed a cooperation plea agreement. She had entered her plea. And he actually asked her to withdraw her plea. Some dispute as to whether he knew about that, right? Well, he does actually ask her in one of the letters to withdraw her plea, and I can provide that cite to the Court if they would like. No, that's all right. I accept. Okay. So at some point, he clearly knew that she had at least pled guilty. And his wife did testify, you know, that once you're in jail, you sort of assume that the other people who are in jail on the same charges may at any point sort of turn against you. And I think that is a jury could reasonably conclude, reading those letters, that his reassurance is that if you have to do time and I don't, I'll wait for you, that his comments about asking her to fire her lawyer and withdraw her plea were designed to protect himself, not to protect a marital relationship. Do you want to talk about CF? I'm sorry. Do you want to talk about the other, the CF? I'm sorry, CF, yes. Count 7, which deals with the Fifth Amendment privilege. And we've seen it there. The purpose of the Fifth Amendment privilege is to protect the person who is being called to testify from being forced to incriminate themselves. It does not protect them from having to incriminate other people. What the defendant was doing in his case was he was asking CF, and we would note that, you know, he asked her not only to not testify and says, you know, it's bad for everybody, but also says, you know, it's a broem. Well, why isn't there a variance problem there? I mean, I'm not usually terribly enamored of variance theories. But in this instance, it appears, I mean, that there were really somewhat distinct theories for proceeding under the statute. And one of them is threats, and another one is lies. And the government, until the trial, I mean, it alleged threats. It didn't allege lies. Other similar, it's something like other similar statements, but this wasn't a similar statement. And before the trial, you seem to be standing directly on threats and not on lies, or on the inherent persuasion without either. And so why isn't there a problem here? She had, she was just not given notice that there was going to be an allegation of a request to lie. I think first, there was evidence presented as to the statements that were actually included in the indictment. And the indictment did have qualifying language saying, including among other things. And it did list those statements, but there was no, during the motion practice, there was no statement as there was in Adamson where the government explicitly disavowed any attempt to rely on other statements. They were litigating the viability of this theory under 1512 that simply telling someone to withhold testimony is not, but my understanding is that there was no explicit disavowal, no saying we will rely solely on. But the jury was told the same thing, both in the instructions and in the argument. So there's no reason to think they relied on this either. So that's not a variance problem, but it's a problem of when, given the instructions and given the arguments, why should we think that the jury actually relied on the lies or the threats as opposed to the government's basic argument, which is essentially the lies and the threats don't matter? Well, the jury was instructed broadly, as under all of the theories under 1512, that it could be a threat, that it could be intimidation, that it could be persuasion. And it could be none of those things if you simply persuaded her to invoke her Fifth Amendment privilege. It could be. And it was ultimately a question of motive. And that's why, in the jury's instructions, they were specifically given definitions for knowing, for corrupt. But they were not told that it needed to be either a threat or a request for lie, right? Correct. Okay. So aren't those things both sort of irrelevant at this point, then, in the sense that we have to assume that they could have convicted her, him, simply for asking her to invoke her Fifth Amendment privilege, because they were asked to do that? It was one of the theories on which they could have convicted her. The government does not dispute that. Right. So for present purposes, the fact that it could have been a threat or it could have been a request for lie really doesn't matter. Although we think when it comes to sufficiency that the Court can also consider if they conclude this is a viable theory, as we believe it is, the Court can consider all of those things in considering whether there is sufficient evidence of motive. Wasn't there some dispute on the record whether CF was ever with him in the court van or? There was some dispute, and if I could address that. The government submitted the court records. Those were in testimony of the marshal records showing that Cohn and Candace and CF and the defendant were all being transported on the same day, on the 11th. The only sort of conflicting testimony came from a marshal who believed that it was simply defendant and CF who had been transferred the day after. But both Candace and Mark Cohn's testimony substantially corroborated each other as to when they were on the bus. And so the government's position was that they believed that the marshal was simply mistaken. So I gather your position on this is essentially the same. If I were to have a friend and say to my friend, you know, you have a Fifth Amendment privilege, don't testify in this trial, you wouldn't think that would be a violation. I think it would turn on the motive. And my motive is I'm not involved in the crime. I'm just saying, you know, you don't need this. Don't do it. You don't need to testify. Then I think I would fall beyond the ambit. All right. So again, your theory turns strictly on the fact that he was doing it with self-interest. Yes. In terms, I mean, that's what we believe. And self-interest equals, correctly, equals self-interest and nothing else. Yes. I mean, the instructions in this case mirrored exactly the instructions that the Supreme Court held in Anderson were required. The need for a consciousness of wrongdoing, the fact that, correctly, there needs to be self-interest. Consciousness of wrongdoing and self-interest are not the same thing. Well, I think the jury could conclude that it was, I think, in this circumstance, because what they were he was asking her to do was to do something that he had no right to ask. And indeed, in earlier, considering 1503, this Court in Cole had said even an innocent act, such as invoking Fifth Amendment rights, can make another criminal who sees that an innocent act is accomplished for a correct purpose. That is, it's one thing for an individual to invoke their own Fifth Amendment right, but when another individual would invoke another right. Can we just establish that if I said it to my friend, it would be okay if I wasn't a criminal? So what makes now I'm trying to figure out what makes it, and I still think that the consciousness of wrongdoing thing is completely circular. Whether it's wrong, you first have to know whether it's wrong before you can know whether he's conscious of the wrongdoing. I think, and that's what I think the jury was asked to consider in this case, was whether he was aware and whether he was doing it with an improper purpose, whether he knew that. They were specifically asked and told that there was no wrongdoing. What is the improper purpose? I think the improper purpose in this case was him trying to prevent C.F. in count 7 and, as alleged under count 8, his wife from testifying against him. Southern. Yes. If I might address, since I see that I'm running short of time, I might address the second issue. Sure. Addressed by counsel, specifically the imposition of the sentence in this case. And I'd note that the defense now appears to be making a new argument, specifically that, although they agreed below and in their opening brief that the modified categorical approach applied, the district court had considered the appropriate documents, they now appear to be arguing that the modified categorical approach does not apply at all. And we would submit that Estrada-Espinoza does not, and that's a sort of massive C change that they suggest. Specifically, if you look at the last paragraph, and I believe it's on page 1160 of the last paragraph, Estrada-Espinoza, what they actually said was the government they did look at the documents in that case, and they said the government does not allege that Estrada-Espinoza was charged with or convicted under any subsection of the California statute, and the only two documents available on the record to confirm the charges cited only the statute. So there didn't appear to be a factual record. So I think when the Court in Estrada-Espinoza said the modified categorical approach cannot be used to conform his conviction to the generic definition of a sexual abuse of a minor, that should be read as saying that based on the documents submitted, they didn't satisfy the modified categorical approach, not that the modified categorical approach does not apply. Kagan. But the question in the modified categorical approach under our cases is what was he convicted of, not what he did. Right? Assuming that the modified categorical approach applies in this case, then yes, that  And why doesn't it? Well, the government had noted, although we did so very briefly, that given the language in 3559E, that it was there's some suggestion that Congress did not intend for it. I understand. And frankly, I think that's a better argument. But you actually didn't deal with that very much. And that's an interesting question. But leaving that aside for now, if it does apply, why, since it didn't matter to his plea whether she was 16 or 17, presumably he had absolutely no reason to worry about it. And that's the problem with this whole notion that if somebody alleges something that isn't an element and doesn't matter, that you are bound by it to contest it, even though it would be completely useless and stupid to contest it. Well, I understand the Court's concern, and that's certainly the concern that Judge Kaczynski expressed in his concurrence in Lee. That, with all due respect, is not the test that has been set out in Sheppard, for example. The question is if you can narrow a statute where an element under the State statute is an element. But it's not an element whether she's 16 or 17. It's not an element of this crime. Her age was an element. No. Whether she was under 18 was an element. Whether she was under 18. But this was a case where the Federal statute has a narrower element, but they both have an age element. And the question was, and under the modified categorical approach under Sheppard, that's classically the sort of question, for example, as with California burglary, whether it's a house versus a car, that the courts can look to to see if the fact was necessarily decided. And it may not be. In this case, it may be that they could have pled more broadly to something without specifying the fact. But if they either do so. Kagan. One of the people that said it was 16, the other one that didn't have her age, and they said they were both under 18, right? Correct. They were both children, minors. And from the defendant's point of view, it's completely irrelevant whether and how old either of them is as long as they're under 18. So it didn't matter that the other one didn't say how old she was and just said she was under 18. But what I think Sheppard and the other categorical imperative cases out of the modified categorical approach out of the cases out of the Supreme Court held is they've not looked to whether, as long as the fact was part of an element, as long as it went to the element, they haven't looked further to say, well, did the defendant have a reason to sort of fight beyond that. I mean, that's precisely the sort of inquiry that they were trying to short-circuit by having a modified categorical approach. And in this case, the defendant actually said he – in this plea agreement, he said that he pled guilty to the facts alleged in the charging document, as more fully alleged in the charging document, and that he understood that by pleading guilty, he was admitting the facts which support all the elements of the offense. That's right. And in this case, he admitted it. The facts that support the elements, and the fact that supports the elements is that she's not 18. Although he specifically – he did not – it didn't say he was pleading only to sort of what the information said. It specifically said Alea D. being 16 years old. And when it – while there might have been an issue had he not specified that both victims were because there was the and-or between Alea D. and, I believe, the other victim was Zena C. In that case, at the guilty plea colloquy, another document that under Shepard this Court can consider, he specifically admitted to both victims in count one. Accordingly, for that reason – You are over your time. And I apologize, Victoria, on that note I will submit. Thank you very much. Thank you. Thanks for coming in today. Thanks for your argument. Roboto. As to the first issue, I'd like to take it back to Anderson, because the government has suggested that the motive of self-interest is what can convert something into the lawful conduct of persuading into the unlawful conduct of corrupt normally The jury here instructed, as in Anderson, that they had to have consciousness of wrongdoing. Yes. Okay. But no one said what consciousness of wrongdoing would be. Okay. And I think that's what's really essential here, is that there was this big debate prior to the jury instructions as to what consciousness of wrongdoing would be, and we lost that side of the debate. The Court seemed to be at the end of the impression that the mere desire to have someone not testify would constitute consciousness of wrongdoing. So counsel then moved her argument to, you know, he didn't mean for them to not testify, which, you know, given the instructions, of course, that's what he would do. Could the jury in this case have, knowing everything that they knew after all the evidence was in, could they have said to themselves, you know, this guy was a pimp. He's sort of a Spengali. There is a psychological overview that pimps use to control prostitutes who work for them, including his own wife, and that was his whole purpose in getting her not to invoke the marital privilege and for C.F. to claim the Fifth Amendment, because he wanted to be out of jail and running the prostitution ring again. Sure, they could have, but the jury instructions certainly didn't require that. And the government has not actually said that. The government has said the one thing that converts his purpose from a lawful purpose to an unlawful purpose is the purpose of self-interest. And that's why I think Anderson is so important, because I don't think there's any reading of the facts in Anderson which would suggest that Anderson, in instructing its employees to destroy documents, was not, in fact, acting in its own self-interest, that they did not want those documents to be fall into the hands of others, including the government. In fact, that's in the Anderson decision itself. And nowhere in Anderson does the Supreme Court suggest, well, we should do a harmless error analysis then, and say, well, given that it's clear that Anderson was acting in its self-interest, we're going to affirm. In fact, they reversed, and the government dismissed that case. It didn't go back to trial on a consciousness of wrongdoing instruction. It was dismissed entirely. So I think that Anderson is very important for that reason. Clearly, in Anderson, the purpose was to protect oneself. But that wouldn't be enough. Another reason Anderson is important is it distinguishes 1503. The government has suggested that we should read 1512 against 1503, and since there are some interpretations of 1503 which indicate that just an improper purpose, vaguely defined, is enough, that we should import that definition into 1512. The Supreme Court in Anderson specifically declined to do that. They dropped a footnote saying the parties have told us that we should apply the definition of corruptly that was present in 1503 and 1505, but we're not going to do that because the word knowingly was missing in 1503 and 1505. So the intent provision, was that in 1503? No. Well, 1503 was modified a number of times. And so 1503 at one point had an intent to impede witnesses, and later it was amended to just be the intent to obstruct justice. Could we go to the other issue? Yes. And what about the government's footnote? First of all, is that enough to preserve the issue? I don't believe it's enough to preserve the issue, but even if it were, I think that the Taylor categorical approach clearly applies here. It seems like a pretty good argument, just on the statutory language, which says it's unusual language. It says a prior sex conviction in which a minor was the victim, rather than a prior sex conviction for sexual activity with a minor. The Ninth Circuit has never not applied the Taylor categorical approach to a case which was a criminal sentencing enhancement. And there's nothing in this statute which suggests, even though it's the language of the statute which you've pointed to, because that language is in a number of different statutes in which the in which language. It's in the INS statute, which is going to go up to the Supreme Court, but it's in a number of other statutes. And this Court has never held that in which language takes it out of the categorical approach. But I think more importantly, there's the Sixth Amendment to consider. And after Apprendi, the fact that the minor in the prior conviction was a your sex conviction. Well, for sure, it would definitely have to go to the jury. You're right about that. It would certainly have to go to the jury. But what difference does it make? It would absolutely have to go to the jury. So there's kind of two options. It could either go to the jury or it could be the fact of a prior conviction. And if it's the fact of a prior conviction, Taylor has to apply. So the question is, does it go to the jury? And there's absolutely nothing about this statute or its legislative history which suggests that Congress thought that when you're charging a Federal sex offense anyway, it didn't go to the jury here, right? It didn't go to the jury. It didn't go to the jury, but yes, it didn't go to the jury. But in terms of the statute itself, there's nothing that suggests that Congress thought that it would make sense that this one fact, the fact that the minor of a prior offense was under 17 should go to a jury in the present case. There's nothing in the statute that suggests that. And what's really interesting is that this statute poststated Apprendi. It poststated Taylor. It poststated all those cases. And there's no reason for writing it that way to be clear that that's what you meant. But you certainly would have to go to a jury. It would have to go to the jury. And no one here thought that it should. And it didn't. So if we were to say that, it would have to go to a jury. And the government isn't arguing that it should go to the jury. All right. I'm not quite sure what the government's arguing to tell you the truth. Okay. Thank you. Thank you for your argument. Thank you both for your arguments. The case just argued will be submitted, and the Court will stand in recess for the day. Thank you.
judges: Hawkins, Berzon, Clifton